IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KENNETH MICHAEL FERGUSON,

      Petitioner,                No. CIV S-08-1262 JAM EFB P

    vs.

D.K. SISTO, Warden, et al.        FINDINGS AND RECOMMENDATIONS

      Respondents.

_____/

      Petitioner is a state prisoner seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent moves to dismiss on the ground that this action is untimely and contains unexhausted claims. For the reasons explained, a portion of the petition is untimely and the remainder has not been exhausted, and the motion should therefore be granted.

**I.    Procedural History**

      Petitioner was convicted of torture with the use of a deadly weapon, corporal injury to a spouse, and assault with a deadly weapon in 1996. Resp.'s Mot. to Dism. ("Mot."), Ex. 4 at 1. He is currently serving a sentence of life with the possibility of parole, plus one year. *Id.*, Ex. 2 at 1. At petitioner's parole suitability hearing on January 12, 2005, the California Board of Parole Hearings ("Board") found him unsuitable for parole. Pet., Ex. A at 84. Petitioner filed a petition for writ of habeas corpus with the Superior Court of San Diego County to challenge the

1

2005 parole denial on August 21, 2005. Mot., Ex. 1 at 59-60. The Superior Court denied the petition on November 9, 2005. *Id.*, Ex. 2. Petitioner then filed a habeas petition with the California Court of Appeal for the Fourth Appellate District on January 30, 2007. *Id.*, Ex. 3 at 73-74. While that petition was pending, the Board again found petitioner unsuitable for parole at a hearing held February 27, 2007. Pet., Ex. N at 1-2. The Court of Appeal denied petitioner's application on March 24, 2007. Mot., Ex. 4. On October 28, 2007, petitioner filed a habeas petition with the California Supreme Court. *Id.*, Ex. 5 at 56. That petition challenged the Board's 2005 denial of parole. *Id.*, Ex. 5. Whether the petition also effectively challenged the 2007 parole denial is at issue in the current motion. A printout from appellatecases.courtinfo.ca.gov shows that the California Supreme Court denied the petition on April 23, 2008. *Id.*, Ex. 6. Respondent has not provided this Court with the actual order of denial, but petitioner does not dispute that his petition was summarily denied on that date. Petitioner filed the instant federal petition on May 26, 2008.

**II.     Statute of Limitations**

A one-year limitation period for seeking federal habeas relief begins to run from the latest of the date the judgment became final on direct review, the date on which a state-created impediment to filing is removed, the date the United States Supreme Court makes a new rule retroactively applicable to cases on collateral review or the date on which the factual predicate of a claim could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1).

There is no tolling of this one-year period "from the time a final decision is issued on direct state appeal [to] the time the first state collateral challenge is filed." *Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999). However, once a petitioner properly files a state post-conviction application the period is tolled, and remains tolled for the entire time that application is "pending." 28 U.S.C. § 2244(d)(2). "[A]n application is properly filed when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v.*

*Bennett*, 531 U.S. 4, 8 (2000).  In California, a properly filed post-conviction application is "pending" during the intervals between a lower court decision and filing a new petition in a higher court.  *Carey v. Saffold*, 536 U.S. 214, 223 (2002).

Finally, a federal habeas petition does not toll the limitations period under 28 U.S.C. § 2244(d)(2).  *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001).

The one-year limitations period may, in some circumstances, be subject to equitable tolling.  The United States Supreme Court has recognized that a habeas petitioner "seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).  In light of this pronouncement, the Ninth Circuit has clarified its own standard as follows:

> The threshold for obtaining equitable tolling is very high, but it applies where a petitioner shows that despite diligently pursuing his rights, some extraordinary circumstance prevented him from timely filing.

*Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009).  Petitioner has the burden of showing facts entitling him to equitable tolling.  *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002).

**A.  Proper Limitations Period Start-Date**

Respondent contends that the federal petition's claims with respect to the Board's 2005 parole denial ("2005 claims") are untimely.  To rule on the timeliness issue, the Court must first determine when AEDPA's limitations period began to run on the 2005 claims.

Where a petitioner challenges a decision denying him parole, the limitations period generally begins to run when the petitioner could have discovered the factual predicate of those claims through the exercise of due diligence.  *Redd v. McGrath*, 343 F.3d 1077, 1082-85.  Respondent argues that limitations period began on the date that the Board panel issued its decision even though that decision did not become final for another 120 days, pending a review process.  *See* Cal. Code Regs. tit. 15, § 2041(h).  Petitioner argues that he did not know the

factual predicate of his claims until the decision became final, especially because the panel indicated that it intended to investigate the veracity of his laudatory chronos following the hearing.

The Court finds that the limitations period on the 2005 claims did not begin to run until the Board's decision became final – January 12, 2005 plus 120 days, or May 12, 2005. Before then, the decision was subject to change, and thus the factual predicate of petitioner's claims was not capable of discovery. *See id.* ("Within 110 days of the hearing, the chief counsel, or a designee, may: (I) affirm the proposed decision, (ii) order a new hearing, or (iii) modify the proposed decision without a new hearing.") This conclusion accords with the holding in *Redd*, in which the Ninth Circuit held that the factual predicate of a parole denial claim became capable of discovery at the conclusion of the prison appeals process (which has since been abolished in California). *Redd*, 343 F.3d at 1084. The court characterized its holding as in harmony with other federal courts of appeal, which had held that the limitations period began to run "on the date the administrative decision became final." *Id.* It expressly declined to hold that the limitations period began "when the initial administrative decision is made[.]" *Id.* at 1084 n.11.

Petitioner further argues, however, that the limitations period on the 2005 claims did not begin to run on May 12, 2005, but rather on November 15, 2006, because limited library resources and access constituted an unconstitutional, state-imposed impediment to the filing of the petition until that date, citing *Egerton v. Cockrell*, 334 F.3d 433, 438-39 (5th Cir. 2003). As mentioned above, the limitations period may begin after the factual predicate of the claim is capable of being discovered where: (1) a state-created impediment (2) that violates federal law or the U.S. Constitution (3) prevents the petitioner from timely filing the petition. 28 U.S.C. § 2244(d)(1)(b) (providing that the limitations period may begin on "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action[.]"). In *Egerton*, the Fifth Circuit concluded that "an inadequate prison law library may

4

1  constitute a state created impediment" under § 2244(d)(1)(b) and found that the absence of
2  AEDPA from a prison law library justified a later start date. *Edgerton*, 334 F.3d at 439.
3        Petitioner conclusorily claims that the library resources at California State Prison -
4  Solano ("CSP-Solano") are unconstitutionally inadequate, but provides no facts supporting that
5  claim. Accordingly, the Court cannot conclude that inadequate library resources justify a later
6  start-date under § 2244(d)(1)(b).
7        Petitioner also argues that his access to CSP-Solano's library was so limited between the
8  May 12, 2005 and November 15, 2006 as to constitute an unconstitutional impediment to his
9  filing. Petitioner submits several documents purporting to show that he was not able to access
10 the law library to prepare his petition prior to November 2006. First, two declarations of David
11 Lang (a "clerk" in the library from sometime in 2003 to March 3, 2005 and from October 2005
12 to June 21, 2006) attest to limited library access between February 2004 and June 21, 2006.
13 Pet'r's Opp'n, Ex. D at 5-7 & 11-13. According to Mr. Lang's first declaration, dated October 7,
14 2005, the relocation of law library supervisor Timothy Crawford to Soledad Prison in February
15 2004 resulted in irregular operation of the library from that time until the summer of 2005, and
16 the library "was closed nearly half the time it should have been open." *Id.*, Ex. D at 5, ¶ 2. Mr.
17 Lang declares that "there would often be no law library access due to fog, emergency counts,
18 'staff meetings,' yard recalls, State holidays, and extra days off for staff," although he provides
19 no specific dates. *Id.*, Ex. D at 5, ¶ 3. Next, Mr. Lang states that "throughout 2004 and thus far
20 in 2005 there have been numerous prison 'lockdowns' based on actual or anticipated prisoner
21 misbehavior, for periods ranging from weeks to months – during which the library was closed."
22 *Id.*, Ex. D at 5, ¶ 4. Certain prison policies presented additional obstacles to library use.
23 Prisoners are permitted to use the library on their two days off work per week. *Id.*, Ex. D at 5-6,
24 ¶ 5. Those without proof of a court deadline within 30 days, such as state habeas petitioners
25 (who must file within a "reasonable" time), are given lower priority access to the library. *Id.*,
26 Ex. D. at 6, ¶ 7. Because the library seats only 24 but serves "a combined population of about

5

3,000 prisoners," it is difficult for prisoners working on habeas petitions to gain access over prisoners with 30-day deadlines. *Id.*, Ex. D at 6, ¶¶ 6-7.

In his second declaration, dated June 21, 2006, Mr. Lang states that "the obstacles impeding law library access as described by my previous sworn Declaration are still in effect." *Id.*, Ex. D at 11, ¶ 3. Mr. Lang also attests to two additional obstacles to library access. First, a program change in January 2006 created a library access schedule separating Yard One's and Yard Two's access to the library; the two yards had previously had simultaneous access. *Id.*, Ex. D at 11, ¶ 4 & at 1-3 (attached library access calendars for April, May, and June of 2006). Thus, before the program change, prisoners in both yards could potentially use the library 20 days per month, but after the program change prisoners in each yard could potentially use it only 10 days per month. *Id.* Another January 2006 program change, instituting a "split yard" schedule in which half the prisoners could access the yard in the morning and the other half in the afternoon, further limited library access, because prisoners could no longer use the library both in the mornings and afternoons. *Id.*, Ex. D at 11-12, ¶ 5 and at 4 (May 2006 yard schedule). According to Mr. Lang, the impact of the two program changes is as follows: "a prisoner housed on Yard One was allowed an absolute maximum of eleven two-hour periods of law library access . . . since January 2006," and "[a] prisoner whose two days off per week from their mandatory job assignments were not on Sunday or Monday [when the library was closed], would have no more than six or seven two-hour periods of law library use." *Id.,* Ex. D at 12, ¶ 6.

"To obtain relief under § 2244(d)(1)(B), the petitioner must show a causal connection between the unlawful impediment and his failure to file a timely habeas petition." *Bryant v. Schriro*, 499 F.3d 1056, 1060 (9th Cir. 2007). While Mr. Lang's declarations provide some facts in support of petitioner's claim that access to the CSP-Solano law library was limited, the record provided does not show that the limited access caused petitioner to delay the filing of his petition. Irregular operation of the library and lockdowns in 2005 did not prevent petitioner from filing a detailed, 60-page petition in the Superior Court on August 21, 2005. Petitioner then

waited 447 days from the denial of that petition to file in the Court of Appeal. His Court of Appeal petition, however, contains very little unique information – petitioner added one 4-page argument asserting generally that the facts alleged in his due process claims also constituted equal protection violations, 5 miscellaneous paragraphs not altering the substance of his claims, and a 7-page explanation for his delay. Mot., Ex. 3 at 5-8 (equal protection argument), 18 (new first and third paragraphs), 29-30 (three new paragraphs beginning mid-page 29 and ending mid-page 30), 65-71 (delay argument). Petitioner has not provided the Court with any information about his actual or attempted library use (e.g., how lockdowns and other prison policies impacted his own attempts at accessing the library to prepare his Court of Appeal petition). Nor has petitioner presented the Court with any facts showing why, even with the restricted access described in Mr. Lang's declarations, it took him 447 days to add a short equal protection argument to his petition. Petitioner further fails to provide any explanation for the selection of November 15, 2006 as the date that the library was no longer unconstitutionally inaccessible – even if the Court were to accept Mr. Lang's declarations as true, they provide information only until June 21, 2006. Accordingly, the Court concludes that, on the record provided, petitioner has not shown entitlement to a later start-date, and the limitations period began to run the day after the Board's decision became final on March 12, 2005. Thus, petitioner had until March 13, 2006 to file the instant petition unless the limitations period was tolled during that year on statutory or equitable grounds.

**B.     Statutory Tolling**

As mentioned above, the limitations period is tolled during the pendency of properly-filed state habeas petitions. 28 U.S.C. § 2244(d)(2). Under *Evans v. Chavis,* 546 U.S. 189 (2006) and *Carey v. Saffold*, 536 U.S. 214 (2002), the gap between two successive California state habeas petitions is tolled only where the second petition was filed within a "reasonable time" after the denial of the first. 546 U.S. at 197; 536 U.S. at 225.

////

7

Here, petitioner filed in the Superior Court on August 21, 2005, 101 days after the limitations period began to run. The limitations period was tolled for 81 days until the Superior Court denied the petition on November 9, 2005, extending the deadline to file a federal habeas petition to July 31, 2006 (264 (365 minus 101) days from November 9, 2005). Petitioner filed in the Court of Appeal on January 30, 2007, 447 days after the Superior Court had denied his petition. Under *Evans* and *Saffold,* the Court of Appeal petition was not filed within a "reasonable time" after the denial of the Superior Court petition, and the limitations period was thus not statutorily tolled for those 447 days. *See Evans*, 546 U.S. at 210 (using 30 to 60 days as general measurement for reasonableness based on other states' rules governing time to appeal to the state supreme court); *Saffold*, 536 U.S. at 219 (same); *Waldrip*, 548 F.3d at 731 (finding that six months between successive filings was not a "reasonable time"). Petitioner's AEDPA limitations period expired during those 447 days, and the federal petition is thus untimely unless equitable considerations justify additional tolling.

### C. Equitable Tolling

Petitioner contends that the limitations period should be tolled from the denial of his Superior Court petition to November 15, 2006 because the following factors prevented him from filing before that date: (1) the limited library access detailed above; (2) prison staff lost legal materials that petitioner had placed in a storage room, and petitioner thus lost access to those materials for an unspecified period in 2006; and (3) he lacks legal education.

The doctrine of equitable tolling serves "to soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court," and to "prevent the unjust technical forfeiture of causes of action." *Harris v. Carter*, 515 F.3d 1051, 1055 (9th Cir. 2007) (granting equitable tolling where petitioner, in deciding when to file his federal petition, relied in good faith on binding Ninth Circuit precedent that later was overruled). Thus, "[e]quitable tolling is typically granted when litigants are unable to file timely petitions as a result of external circumstances beyond their direct control." *Harris*, 515 F.3d at 1055. As

8

noted above, it is petitioner's burden to establish that: (1) he has diligently pursued his rights and (2) some extraordinary circumstance stood in his way and caused the untimeliness. *Waldron-Ramsey,* 556 F.3d at 1011; *Miranda*, 292 F.3d at 1065. Petitioner has not met that burden here, for the following reasons.

First, petitioner has not provided sufficiently specific allegations about his personal library access for the Court to determine whether he diligently pursued his rights or whether the circumstances he alleges actually caused the untimeliness. As discussed above, petitioner has not provided the Court with information about his own unsuccessful attempts to use the library or why his alleged lack of access caused his untimeliness. Lacking specific allegations illustrating diligence and extraordinary circumstances causing the late filing, the Court concludes that petitioner has not shown his entitlement to equitable tolling. *See Waldron-Ramsey*, 556 F.3d at 1013-14 (holding that the petitioner did not show that he was entitled to equitable tolling where he failed to provide specific facts showing diligence and explaining the entirety of his delay).

Second, the record provided by petitioner with regard to the loss of his legal materials indicates that he did not diligently pursue his rights. Petitioner's exhibits show that he did not inquire about his stored documents until April 22, 2006, five months after the Superior Court had denied his petition. Pet'r's Opp'n, Ex. C. Petitioner provides no facts showing his diligent pursuit of his petition during that period.

Lastly, petitioner's lack of legal knowledge is not an "extraordinary circumstance" warranting equitable tolling. *Raspberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) ("[A] pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling.").

Accordingly, petitioner is not entitled to equitable tolling. As the limitations period on his 2005 claims expired on July 31, 2006, those claims are untimely in the instant petition (filed May 26, 2008) and must be dismissed.

**III.    Exhaustion**

A district court may not grant a petition for a writ of habeas corpus unless the petitioner has exhausted available state court remedies or circumstances exist which render those remedies ineffective to protect the petitioner's rights. 28 U.S.C. § 2254(b)(1). A state will not be deemed to have waived the exhaustion requirement unless the state, through counsel, expressly waives the requirement. 28 U.S.C. § 2254(b)(3).

Exhaustion of state remedies requires that petitioners fairly present federal claims to the highest state court, either on direct appeal or through state collateral proceedings, in order to give the highest state court "the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (some internal quotations omitted). "[A] state prisoner has not 'fairly presented' (and thus exhausted) his federal claims in state court unless he specifically indicated to that court that those claims were based on federal law." *Lyons v. Crawford*, 232 F.3d 666 (9th Cir. 2000), *amended by*, 247 F.3d 904 (9th Cir. 2000). A petitioner must also describe the operative facts on which the claim is based to give the state courts a fair opportunity to apply the controlling law to the facts giving rise to the alleged federal constitutional violation. *Castillo v. McFadden*, 399 F.3d 993, 998-99 (9th Cir. 2003); *see also Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) ("a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief"). Additionally, the petitioner must present his federal, constitutional claim within the four corners of his briefing before the state court. *Castillo*, 399 F.3d at 1000.

Respondent argues that petitioner's claims with regard to the Board's denial of parole in 2007 ("2007 claims") have not been properly exhausted, because petitioner did not "fairly present" them to the California Supreme Court. According to respondent, petitioner referred to the 2007 parole denial in his California Supreme Court petition only once, in a handwritten notation, and such reference was insufficient to fairly present the claims alleged in the instant

10

petition.

Respondent is correct that petitioner's typewritten California Supreme Court petition, containing seven enumerated grounds for relief, addressed, in bulk, the Board's 2005 parole denial decision. Mot., Ex. 5 at 7.  Ground One, alleging equal protection claims, refers only to "the Board's decision that petitioner is unsuitable for parole" and does not refer explicitly to either the 2005 or the 2007 proceedings. *Id.*, Ex. 5 at 1-5.  Ground Two, alleging bias by the Board, refers to and quotes the 2005 proceedings 14 times, but does not refer to or cite the 2007 proceedings at all. *Id.*, Ex. 5 at 6-16.  Ground Three, raising numerous claims under the federal constitution and California law, refers to and quotes the 2005 proceedings 11 times. *Id.*, Ex. 5 at 17-29.  On page 21 of the petition, however, petitioner inserted the handwritten notation "& 2007" as indicated by brackets in the following quote: "At the 2005 [& 2007] Board hearing[s], petitioner was able to show that he met <u>all</u> the suitability criteria, thus demonstrating his suitability for release, and the Board exhibited its bias by ignoring its statutory obligation to consider those factors: [Petitioner then listed various suitability factors and cited to the hearing transcript for 2005 and items in the 2005 record to support his argument]."[1]  Ground Four, contesting the Board's finding that petitioner was not adequately rehabilitated, contains one reference to the 2005 proceedings and none to the 2007 proceedings. *Id.*, Ex. 5 at 30-34. Ground Five, contesting the Board's reliance on the victim's testimony, refers to the 2005 proceedings eight times but never to the 2007 proceedings. *Id.*, Ex. 5 at 35-42.  Ground Six, contesting the Board's refusal to consider laudatory chronos, refers to the 2005 proceedings once but never to the 2007 proceedings. *Id.*, Ex. 5 at 43-44.  Lastly, Ground Seven, contesting the Board's failure to set a "primary term," refers to the 2005 proceedings twice and expressly challenges, within the typewritten body of the argument, a 2007 hearing dated November 19, 2007. *Id.*, Ex. 5 at 45-55 (at 53-54: "[T]he Board has ignored its duty to set a primary term

---

[1] The Court notes that the California Supreme Court petition contains numerous handwritten editing notations. Apparently, the petition was not put into final draft form prior to its submission.

11

based on culpability and proportionate to other terms of custody for the offense of torture as charged by California P.C. § 206, at petitioner's initial hearing, at his 2005 hearing, and at his latest hearing on November 19, 2007."). However, petitioner's actual 2007 hearing occurred in February, not November, of that year. He submitted with the petition exhibits lettered A through L, all of which concerned the 2005 proceedings, and appended nine documents not given exhibit markings, two of which concerned the 2005 proceedings and seven of which concerned the 2007 proceedings. *Id.*, Ex. 5, appended documents 3-9 (including the Board's face sheet regarding the 2007 denial, a CDC form 128g regarding the same, laudatory chronos from 2007, excerpts from 2006 psychological evaluations, an excerpt from the 2007 hearing, and the full 2007 Board decision denying petitioner parole).

In sum, petitioner's California Supreme Court petition included the following references to the 2007 proceedings: (1) a handwritten editing notation indicating that petitioner wished to include an argument that the 2007 parole panel failed to consider suitability factors in the final draft of his petition; (2) a statement that the Board erroneously failed to set a primary term at a 2007 hearing occurring in November, when petitioner's 2007 parole suitability hearing occurred in February; and (3) seven appended documents concerning the 2007 proceedings. Petitioner has raised the same seven grounds for relief in his federal petition as he raised in his petition before the California Supreme Court. The Court must therefore determine whether the references to the 2007 proceedings in the California Supreme Court petition summarized above served to exhaust all seven grounds.

The Court easily concludes that petitioner failed to fairly present the operative facts regarding the 2007 hearing underlying Grounds Two, Four, Five, and Six to the California Supreme Court. On those grounds, his state court petition failed to refer at all to the 2007 proceedings, while citing and quoting the 2005 proceedings numerous times. Presented with such detailed argument regarding 2005 and no argument regarding 2007, the California Supreme Court could not reasonably be expected to assume that petitioner also wished to challenge the

1  2007 proceedings on those grounds.  The state court can not be expected to sift the record to
2  determine whether the same or similar incidents that petitioner took issue with regarding the
3  2005 proceedings occurred in the 2007 proceedings and then presume that petitioner was
4  challenging those incidents as well – petitioner must make the operative facts of his claims clear.
5  　　　　Whether petitioner exhausted claims regarding the 2007 proceedings in Grounds One,
6  Three, and Seven presents a more complicated issue.  In the Ground Three section of his
7  petition, petitioner first generally argued that: (1) the Board's findings violated his right to due
8  process because the findings were based on speculation and conjecture lacking support in the
9  record; (2) the federal Constitution requires that a parole denial be based on more than "some
10  evidence" of unsuitability; and (3) the Board operates under a blanket policy to deny parole to
11  life prisoners.  Petitioner did not specify whether he raised those general arguments with regard
12  to the 2005 proceedings or the 2007 proceedings.  Then, in a sub-section headed "Statement of
13  the Facts," petitioner argued, with the handwritten insertion (here placed in brackets), that, "[a]t
14  the 2005 [& 2007] Board hearing[s], petitioner was able to show that he met all the suitability
15  criteria" and then supported that argument solely with citations to the 2005 hearing transcript
16  and record.  Later in the same sub-section, petitioner argued that "the record" lacked some
17  evidence of unsuitability, not clarifying whether he referred to the 2005 record, the 2007 record,
18  or both, but supporting that claim by citing only the 2005 decision and record.
19  　　　　After careful consideration, the Court concludes that, in Ground Three, petitioner did not
20  fairly present to the California courts a claim regarding the 2007 proceedings.  In his claims that
21  the Board denied him due process or equal protection because: (1) they were not supported by
22  evidence; (2) the Board acted pursuant to a "no parole" policy; or (3) the federal constitution
23  requires more than "some evidence" of unsuitability, petitioner cited only (and repeatedly) to the
24  2005 proceedings.  It is not reasonable to expect the California Supreme Court to have assumed,
25  based solely on a single handwritten notation referring to the 2007 hearing within one claim in
26  Ground Three, that every other claim raised within Ground Three also challenged the 2007

proceedings. The only "operative facts" petitioner presented on those three arguments regarded the 2005 proceedings. In addition, despite the handwritten insertion, the Court finds that petitioner also failed to fairly present an argument that, in the 2007 proceedings, the Board failed to consider suitability factors due to bias. While the handwritten insertion into that argument suggested that the claim encompassed both 2005 and 2007, petitioner failed to present any facts about the 2007 hearing, citing and quoting solely the 2005 proceedings.

The Court also concludes that petitioner did not fairly present a claim regarding the 2007 proceedings within Ground Seven of his petition to the California Supreme Court. Petitioner again supported that claim by citing and quoting solely the 2005 hearing. He referred to 2007 only once, in passing, and provided an incorrect date for the 2007 hearing, so that if the state court looked to his appended documents to review the hearing being challenged, it would find nothing from the date cited by petitioner. Accordingly, the Court finds that petitioner did not provide the state court with the operative facts underlying his claim that the 2007 parole panel failed to set a primary term and therefore failed to exhaust that claim.

Lastly, the Court concludes that petitioner did not fairly present a claim regarding the 2007 proceedings within Ground One of his California Supreme Court petition. In Ground One, petitioner generally argued that the constitutional violations contained in the remainder of his petition (grounded in due process) also constituted equal protection claims, and that "the Board's decision that petitioner is unsuitable for parole" violated the Equal Protection Clause. Petitioner did not specify which Board decision he challenged, but referred to the remainder of his petition, stating: "[T]he federal constitutional Due Process violations hereafter addressed within this petition are separately and distinctly subject to review and remedy as violations of the right to Equal Protection of Law as secured by the Fifth Amendment to the U.S. Constitution." As the Court has concluded that the remainder of the state court petition, replete with references to the 2005 proceedings but nearly barren of references to the 2007 proceedings, failed to present the operative facts underlying a claim challenging the 2007 Board decision, the Court also finds that

14

Ground One does not include such facts.

Petitioner argues that exhaustion should be excused here, because petitioner has been consistently denied parole and the California courts have not entertained his past petitions, citing *Lynce v. Mathis*, 519 U.S. 433, 436 n.4. In *Lynce*'s footnote four, the U.S. Supreme Court indicated that, where a state's highest court has consistently and recently decided a legal issue in a manner contrary to that put forward by the petitioner, exhaustion of that issue in the state court would be futile and is therefore unnecessary. *Id.* The California courts' alleged past reluctance to entertain petitioner's claims with regard to past parole denials do not fall within the exception addressed in that footnote. Rather, each of petitioner's parole denials present separate facts, and the state courts' past determinations that the facts of past parole denials did not warrant relief say nothing about how the state courts would view the facts of the 2007 parole denial.

As petitioner failed to provide the California Supreme Court with the operative facts underlying his claims about the 2007 parole denial, the Court finds that he has not exhausted those claims and they must be dismissed.

## IV.   Conclusion

The Court finds that petitioner has filed the instant habeas petition beyond the one-year limitations period provided for by AEDPA applicable to his claims challenging the Board's denial of his parole in 2005. Petitioner filed the petition outside the limitations period (even considering the periods of statutory tolling to which he is entitled based on state court filings), he has failed to show facts justifying equitable tolling, and the Court has concluded that he is not entitled to a later limitations period start-date based on a state-imposed impediment to filing. Furthermore, petitioner has failed to exhaust his claims challenging the Board's denial of his parole in 2007 by fairly presenting the operative facts underlying those claims to the California Supreme Court. Therefore, respondent's motion must be granted.

////

////

1   Accordingly, IT IS HEREBY RECOMMENDED that respondent's motion to dismiss
2 be granted and the Clerk be directed to close the case.

3   These findings and recommendations are submitted to the United States District Judge
4 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one
5 days after being served with these findings and recommendations, any party may file written
6 objections with the court and serve a copy on all parties.  Such a document should be captioned
7 "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections
8 within the specified time may waive the right to appeal the District Court's order. *Turner v.*
9 *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In
10 his objections petitioner may address whether a certificate of appealability should issue in the
11 event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing
12 Section 2254 Cases (the district court must issue or deny a certificate of appealability when it
13 enters a final order adverse to the applicant).

14 Dated:  January 26, 2010.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

16